IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN M. CORLISS, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-03-2201 |
| | : | |
| LOUIS S. FOLINO, et. al., | : | (Judge Jones) |
| | : | |
| Respondents | : | |

**MEMORANDUM AND ORDER**

**April 26,  2005**

Justin M. Corliss ("Plaintiff" or "Corliss"), an inmate presently confined in the

Greene State Correctional Institution, in Waynesburg, Pennsylvania, filed the instant

Petition for Writ of Habeas Corpus ("the Petition") pursuant to 28 U.S.C. § 2254.  He

challenges a conviction imposed by the Court of Common Pleas of Monroe County,

which is located in Stroudsburg, Pennsylvania.  As a response and traverse have been

filed, the Petition is ripe for disposition.

For the reasons that follow, the Court will deny the Petition.

**Background**

On June 13, 1998, following a jury trial, Petitioner was convicted of

aggravated indecent assault, statutory sexual assault, indecent assault, and corruption

of minors.  On August 20, 1998, he was sentenced to serve four (4) to ten (10) years on the aggravated indecent assault conviction and concurrent terms of incarceration on the charges of sexual assault and corruption of minors.

Petitioner filed post-sentence motions which were denied on October 23, 1998. Corliss' appellate counsel filed a direct appeal with the Superior Court of Pennsylvania.  The issues raised on appeal were:

1.  trial counsel's ineffectiveness for failing to call various witnesses, including an alibi witness, character witnesses and "traffic witnesses"

2.  trial counsel's ineffectiveness in failing to adequately prepare a defense witness

3.  trial counsel's failure to introduce the results of a rape test kit.

(Doc. 46, Superior Court Opinion dated 11/13/1999).  In addition to the issues raised by appellate counsel, Corliss filed a *pro se* brief challenging the effectiveness of post-trial counsel, who also was appellate counsel, and raised various assertions, including the following:

1.  trial counsel was ineffective for failing to present evidence that the complaining witness had admitted to two adults, including Rusty Pharris and one of Appellant's employees, that she never had sex with Appellant;

2

2.   trial counsel should have allowed Appellant to examine the results of the rape kit testing since they actually were exculpatory, contrary to the Commonwealth's assertion;

3.   Appellant did provide specific names of character and alibi witnesses to post-trial counsel and those witnesses were supposed to be subpoenaed to testify at the post-trial hearing about trial counsel's ineffectiveness but post-trial counsel decided not to subpoena them;

4.   trial counsel was ineffective for failing to request a prompt complaint instruction;

5.   the Commonwealth has engaged in unconstitutional discriminatory prosecution since the complaining witness has engaged in sexual intercourse with a number of other adults who were not prosecuted;

6.   the district attorney had a conflict of interest and told Ms. Vales, Appellant's live-in girlfriend, to leave Appellant since she had children;

7.   police used information about the mark on Appellant's penis that they actually had gained from Ms. Vales and told the victim about the mark;

8.   Appellant was tricked into writing the July 7, 1997 card, which did not actually reflect true events regarding the relationship between him and D.G.;

9.   trial counsel failed to explore various evidence that the victim had a motive to fabricate these charges and that evidence was admissible under the Rape Shield Law;

10.  trial counsel was ineffective for failing to cross-examine the victim about a motive to fabricate due to an argument that she had with Appellant on the day that the sexual

activity was reported to police;

11.    trial counsel was ineffective for failing to request an alibi instruction.

(Doc. 46, Superior Court Opinion dated 11/30/99 at 11, 12).

In a Memorandum and Order dated November 30, 1999, the Superior Court affirmed the judgment of sentence.   (Doc. 46, Superior Court Opinion dated 11/30/99).  The Court, however, remanded the proceeding to the trial court for an evidentiary hearing concerning the numerous claims made by Corliss on appeal regarding ineffective assistance of counsel.   Id.

On January 27, 2000, Petitioner filed a petition for relief with the trial court raising additional claims of ineffective assistance of counsel. (Doc. 46, Superior Court Opinion dated 4/20/01).   Following an evidentiary hearing on April 25, 2000, the trial court denied Corliss' petition for relief based on allegations of ineffective assistance of trial and appellate counsel. (Doc. 46, Monroe County Court of Common Pleas Opinion dated 2/20/00).

Petitioner then appealed the trial court's denial to the Pennsylvania Superior Court.   On appeal, Corliss raised the following claims of ineffective assistance of counsel:

4

1. failure to call two witnesses to testify that the victim denied having sex with appellant.

2. failure to introduce the results of a rape test kit and/or failing to seek a retest of a DNA sample

3. failure to call character witnesses

4. failure to request a prompt complaint instruction

5. failure to purse allegations the prosecutor had a conflict of interest

6. failure to investigate and/or respond to the physical description provided by the victim

7. failing to call a witness to testify that appellant did not commit the offenses

8. failing to adequately challenge the credibility of the investigating police officer and the victim.

(Doc. 46,  Superior Court Opinion dated 4/20/01).  In addition, Corliss raised the following issues:

1. Does the prosecution engage in prosecutorial misconduct in failing to prosecute other individuals other than the accused for allegedly committing the same crime with the same victim?

2. Is an individual improperly convicted of aggravated assault when the same facts apply for the conviction of aggravated indecent assault as for statutory sexual assault, a lessor offense?

5

> 3.   Does a trial court improperly sentence an individual in the aggravated range because essentially the accused would not admit guilt, and the accused was charged, but not convicted, of having sex with a minor child in the presence of another minor child?

Id.  In a Memorandum Opinion dated April 20, 2001, the Pennsylvania Superior Court viewed the trial court's dismissal of Petitioner's claims as a dismissal of a petition filed under the Post Conviction Relief Act ("PCRA") and looked to see whether the PCRA Court's findings were supported by the record and free of legal error.  (Doc. 46, Superior Court Opinion dated 4/20/01 at p. 3 .  The Superior Court affirmed the trial court's dismissal of Petitioner's ineffective assistance of counsel claims.  Id.  The Court, however, refused to address Petitioner's claim that the trial court improperly sentenced him, finding that claim had not previously been raised either on direct appeal or in Petitioner's January 27, 2000 petition for relief.  Id.

On June 7, 2001, Corliss filed a second PCRA petition.  In an opinion dated July 30, 2001, the PCRA court found that the second PCRA petition essentially raised the same issues contained in Petitioner's January 27, 2000 PCRA petition and disposed of in the trial court's June 20, 2000 Opinion. (Doc. 46, Monroe County Court of Common Pleas Opinion dated 7/30/01).  The Court found that the only new issue raised was that of PCRA counsel's ineffectiveness at Petitioner's April 25, 2000

evidentiary hearing.  The Court addressed this issue on the merits and denied relief. Finding that the merits of the remaining claims were adequately addressed by the Court's June 20, 2000 Order, the Court denied Corliss' second PCRA petition for the reasons set forth in its prior Order.  Id.  Petitioner appealed the decision to the Pennsylvania Superior Court.

By a Memorandum Opinion dated July 16, 2002, the Superior Court determined that the PCRA Court failed to adhere to the mandatory requirements of Pennsylvania Rule of Criminal Procedure 907, which provides that, should the PCRA Court decide to dismiss a PCRA petition without a hearing, the PCRA Court must give notice of its intent to dismiss the petition and allow the defendant twenty (20) days within which to respond to the proposed dismissal.  (Doc. 46, Superior Court Opinion dated 7/16/02).  Thus, the Superior Court vacated the PCRA Court's July 30, 2001 Order and remanded the matter to the PCRA Court so that Corliss could be provided with proper notice.  Id.  Respondents then filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 24, 2002.

On February 19, 2003, in accordance with Pa. Rule of Criminal Procedure 907, the PCRA Court issued a Notice of Disposition Without a Hearing, indicating

its intent to dismiss Corliss' second PCRA petition within twenty (20) days. (Doc.

46, Notice of Disposition without Hearing). By Order dated March 13, 2003, the

PCRA Court adopted the analysis contained in its July 30, 2001, Opinion and denied

Corliss' second PCRA petition. (Doc. 46, Monroe County Court of Common Pleas

Order dated 3/13/03). On April 8, 2003, Petitioner filed an appeal of the denial of his

PCRA petition to the Pennsylvania Superior Court. He raised the following grounds

for relief:

1.   There is no evidence of record to support the elements of
     aggravated indecent assault or indecent assault for the
     evening time of July 19, 1997, thus rendering the
     convictions and sentence thereon illegal and void being in
     violation of state and federal law in part due to fatal
     variances in information and charge.

2.   Did the trial court err in rendering an ambiguous alibi
     instruction that also did not reflect alibi evidence of record
     for the July 9, 1997 evening time frame in violation of
     [A]ppellant's state and federal rights?

3.   Did the [trial] court err in suppressing relevant and
     material DNA evidence that exculpates Appellant of the
     crimes convicted of thus depriving him of a defense and
     confrontation in violation of Appellant's state and federal
     rights because the Commonwealth fraudulently claimed
     this Brady evidence was "inconclusive"?

4.   Did the [trial] court err in refusing to provide the jury
     evidence properly for its purview on deliberations?

8

5.      Did the Commonwealth's intentional use of suborned perjury of other alleged crimes[,] [intention] to force a mistrial and to control the outcome of the trial violate [A]ppellant's state and federal rights?

6.      Was [A]ppellant deprived of a fair trial when counsel refused to pursue, obtain [or] introduce the substantial inferences available to him of Appellant[']s good character?

7.      Should the [PCRA] Court's conduct be gauged by the capricious disregard standard for usurping the legislative intent of the PCRA?

8.      Would reliance on prior panel decisions in this case be error due to a pattern of misapprehensions of facts and law that render those decisions erroneous?

9.      Is the denial of [A]ppellant's PCRA patently erroneous.

(Doc. 46, Superior Court Opinion dated 11/13/03).

On November 13, 2003, the Superior Court affirmed the PCRA Court's dismissal, but on different grounds. (Doc. 46, Superior Court Opinion dated 11/13/03). The Superior Court found that Petitioner's second PCRA petition was not timely filed,[1] and that Petitioner did not demonstrate that any of the exceptions to the

---

[1] The Superior Court held that Petitioner's second PCRA petition, which was filed on June 7, 2001, was filed more than one year after his sentence became final on January 27, 2000. (Doc. 46, Superior Court Opinion dated 11/13/03 at p. 5, fn. 5). The Superior Court determined that Corliss' sentence became final on January 27, 2000 when he filed his first PCRA petition, thereby voluntarily discontinuing the evidentiary hearing which was ordered by the Superior Court and

9

timeliness requirements of the PCRA were applicable.  <u>Id.</u>

On December 5, 2003, Petitioner filed the instant Petition for Writ of Habeas Corpus.  He raises the following grounds for relief:

1.    No evidence of record exists to support the elements required to prove the crimes of aggravated indecent assault nor indecent assault for the evening time frame of July 9, 1997 rendering the conviction thereon illegal.

2.    The alibi instruction given to the jury was fatally flawed as it did not reflect evidence of record that placed  petitioner over four miles away from the claimed scene as the instruction did not adequately convey to the jury the burden of proof or the law and the prosecution impermissibly introduced and pursed undisclosed alibi rebuttal testimony abrogating Due Process.

3.    The Court erred in suppressing relevant and material DNA evidence that exculpates Petitioner.

4.    Trial court erred in refusing to provide Petitioner's jury with evidence for their purview on deliberations.

5.     The Commonwealth intentionally pursued and introduced at trial suborned perjury of other alleged crimes to control the outcome of the trial.

6.    Trial counsel failed and refused to reasonably investigate,

---

rendering his judgment of sentence final for purposes of calculating the timeliness of his first and subsequent PCRA petitions.  <u>See</u> <u>Commonwealth v. Conway</u>, 706 A.2d 1243, 1244 (Pa. Super. 1997)(holding that petitioner's voluntary discontinuation of direct appeal renders judgment of sentence final for purposes of timeliness provisions of PCRA).

> pursue, nor introduce, evidence of petitioner's good
> character.

(See Rec. Doc. 1).  Respondent contends that the Petition should be dismissed for

Petitioner's failure to exhaust state court remedies.

For the reasons set forth below, the Court finds that the majority of the issues

raised by Petitioner have not been properly exhausted; however, two of the issues

raised by Petitioner have been exhausted and will be addressed on the merits.

**Discussion**

**A.**   **Exhaustion**

"A federal court may not grant a writ of habeas corpus unless (1) 'the applicant

has exhausted the remedies available in the courts of the state,' (2) no such state

remedy is available or (3) available remedies are ineffective to protect the applicant's

rights.  28 U.S.C. § 2254(b)(1)."  Henderson v. Frank, 155 F.3d 159, 164 (3d Cir.

1998).  "The exhaustion requirement is satisfied when the state courts have had an

opportunity to pass upon and correct alleged constitutional violations."  Evans v.

Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992).

The exhaustion requirement "is not a mere formality.  It serves the interests of comity

between the federal and state systems by allowing the state an initial opportunity to

determine and correct any violations of a federal prisoner's federal rights." <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir. 1986). "Unless it would be patently futile to do so [state prisoners] must seek relief in state court before filing a federal habeas petition...." <u>Santana v. Fenton</u>, 685 F.2d 71, 77 (3d Cir. 1982).

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. <u>McMahon v. Fulcomer</u>, 821 F.2d 934, 940 (3d Cir. 1987). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." <u>Lines v. Larkins</u>, 208 F.3d 153, 159 (3d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1082 (2001). Fair presentation requires that the "substantial equivalent" of a petitioner's federal habeas claims be presented to the state courts. <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997).

Further, a petitioner must have presented any claim upon which federal habeas corpus is sought to the state's highest court in a petition for discretionary review, if that process is available. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999). In Pennsylvania such a device is a petition for allowance of appeal (allocatur petition)

12

to the supreme court.  On May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administrative Order No. 218 which deems claims exhausted after having been presented to only the Pennsylvania Superior Court; however, that order does no apply retroactively.  See Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001).  Thus, Order No. 218 does not apply to Corliss' direct appeal, which was pursued before the implementation of Order No. 218.

The claims raised in the instant petition are the same claims raised by Corliss in his appeal to the Pennsylvania Superior Court from the trial court's denial of his second PCRA petition.  (See Doc. 46, Superior Court Opinion dated 11/13/03). These claims, however, were not addressed by the Pennsylvania Superior Court as the Court found Petitioner's second PCRA petition to have been untimely filed.  See Id. Thus, it appears that Petitioner has not completed one full round of the state's established review process before seeking federal review of the issues raised in the instant petition. See Merritt v. Blaine, 326 F.3d 157, 165-66 (3rd Cir. 2003)(PCRA petition found to be untimely does not qualify as a properly filed application for relief).  However, although these issues may have not been exhausted through the proper filing of a second PCRA petition, Petitioner also filed a direct appeal from his conviction, as well as a first PCRA petition.  Thus, the Court must look to see if any

of the instant issues have been raised in these procedural paths to effectively meet the exhaustion requirement.  An individual exhaustion analysis of each issue raised by Petitioner will be conducted.

> **1.    No evidence of record exists to support the elements required to prove the crimes of aggravated indecent assault nor indecent assault for the evening time frame of July 9, 1997 rendering the conviction thereon illegal.**

This issue was raised for the first time in Petitioner's appeal to the Pennsylvania Superior Court from the denial of his second PCRA petition.  As was previously indicated, the Superior Court refused to address the issues raised in Petitioners' appeal, having found his second PCRA petition to have been untimely filed.  Thus, Petitioner has failed to complete one full round of the state's established review process before seeking federal review of this issue.

To the extent that Petitioner attempts to intertwine this issue with the sufficiency of evidence issue raised in Petitioner's first PCRA petition, and addressed by the trial court in its June 20, 2000 opinion, (See Doc. 1, Section VII, p. 4), the issue raised in the state court is not the "substantial equivalent" of Petitioner's federal claim.  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  The claim raised in the state court was whether Corliss should have been convicted of statutory

14

sexual assault and aggravated indecent assault because the facts underlying both charges are identical. (See Doc. 46, Monroe Court of Common Pleas Opinion dated 6/20/00). Thus, Petitioner has not properly exhausted this issue.

Finally, to the extent that Petitioner couches this issue in terms of trial counsel's failure to raise the issue of insufficient evidence, (See Doc. 1, Section VII, p. 3), this is the first time Petitioner has raised this issue in any court. Thus, it is clear that this issue has not been fairly presented to each level of the state courts.

**2.    The alibi instruction given to the jury was fatally flawed as it did not reflect evidence of record that placed the petitioner over four miles away from the claimed scene as the instruction did not adequately convey to the jury the burden of proof or the law and the prosecution impermissibly introduced and pursed undisclosed alibi rebuttal testimony abrogating Due Process.**

Petitioner's only challenge to the Court's jury instruction was in his appeal to the Pennsylvania Superior Court from the denial of his second PCRA petition. This issue has clearly not been exhausted.

Petitioner also attempts to challenge the jury instruction through trial counsel's ineffectiveness, specifically stating that "he argued the alibi defense, yet inexplicably stood silent when the inadequate instruction was given, making no attempt to correct

it." (See Doc. 1, Section VII, p. 8). This issue was not only raised for the first time in Petitioner's appeal to the Pennsylvania Superior Court from the denial of his second PCRA petition, but is completely contrary to the issue raised by Petitioner in his first PCRA petition, namely that trial counsel was ineffective for failing to adequately investigate and pursue an alibi defense at trial. (See Doc. 46, Monroe Court of Common Pleas Opinion dated 6/20/00). The trial court found that the record demonstrated that trial counsel properly filed a Notice of Alibi Defense. Id. at p. 15. At Petitioner's evidentiary hearing, trial counsel testified that he did not request an alibi instruction because the evidence did not support the defense; specifically, the testimony of Corliss' witnesses did not establish an alibi, but merely disputed the veracity of the victim's testimony. Id. The trial court found that Corliss was not entitled to an alibi instruction and counsel could not be ineffective for failing to request an alibi instruction. Id. at p. 16. Thus, it appears that not only is Petitioner's issue of trial counsel's ineffectiveness for not objecting to the jury instruction unexhausted, but is also meritless.

**3.      Did the [trial] court err in suppressing relevant and material DNA evidence that exculpates Appellant of the crimes convicted of thus depriving him of a defense and confrontation in violation of Appellant's state and federal rights because the Commonwealth fraudulently claimed this <u>Brady</u> evidence was "inconclusive"?**

In addition to raising this issue in his appeal to the Pennsylvania Superior Court from the denial of his untimely second PCRA petition, Corliss raised this issue in his direct appeal.   However, because Petitioner's direct appeal was pursued before the implementation of Order No. 218, Petitioner can only pursue this issue if it has been fairly presented to Pennsylvania Supreme Court.   Since Corliss did not file a petition for allowance of appeal to the Pennsylvania Supreme Court, he has not properly exhausted the third claim raised in the instant Petition.

**4.      Did the [trial] court err in refusing to provide the jury evidence properly for its purview on deliberations?**

Aside from raising this issue for the first time in his appeal to the Pennsylvania Superior Court from the denial of his untimely second PCRA petition, Petitioner has not raised this issue in any other forum.   Thus, Petitioner has failed to complete one full round of the state's established review process before seeking federal review of this issue.

17

**5.      The Commonwealth intentionally pursued and introduced at trial suborned perjury of other alleged crimes to control the outcome of the trial.**

Petitioner alleges that the prosecution introduced suborned perjury by directing the victim to claim knowledge of a birthmark located on Petitioner's penis. Petitioner claims that as a result he was "forced to defend against new allegations of indecent exposure and indecent assault." (Doc. 1, Section VII, p. 18). Petitioner claims that the Commonwealth "did this to force a mistrial and to gain a tactical advantage, anticipating the slumber of both the court and counsel." Id. Petitioner concludes, "however, 'it is axiomatic that allegations of other crimes is inadmissible against defendant at trial on another charge.'" Id. Aside from raising this issue for the first time in his appeal to the Pennsylvania Superior Court from the denial of his untimely second PCRA petition, Petitioner has not raised this issue in any other forum. Thus, Petitioner has failed to complete one full round of the state's established review process before seeking federal review of this issue.

Contained within this issue is the issue that trial counsel was ineffective in the manner in which he addressed the victim's knowledge of the birthmark on Petitioner's penis. This issue was raised by Petitioner in his first PCRA petition and properly appealed to the Pennsylvania Superior Court. Thus, Petitioner has adequately

18

exhausted his state court remedies with respect to this issue.  The Court will address this issue *infra* on the merits.

> **6.     Trial counsel failed and refused to reasonably investigate, pursue, or introduce evidence of Petitioner's good character.**

In addition to presenting this issue in his appeal to the Pennsylvania Superior Court from the denial of his untimely second PCRA petition, Petitioner also raised this claim in his first PCRA petition, which was effectively appealed to the Pennsylvania Superior Court.  Thus, Petitioner has properly exhausted this claim and it will be addressed below on the merits.

As to the preceding claims that have not been exhausted, "[w]hen a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'"  28 U.S.C. §2254(b); <u>see also</u>  <u>Werts v. Vaughn</u>, 228 F.2d 178, 192 (3d Cir. 2000).  It must be clear from existing state law and state court decisions that an avenue is foreclosed before exhaustion will be excused.  <u>Lines</u>, 208 F.3d at 163.

In such cases, applicants are considered to have procedurally defaulted their

claims and federal courts may not consider the merits of such claims unless the applicant establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991). McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); see also, Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001); Keller v. Larkins, 251 F.3d 408, 415 (3d Cir.) cert. denied, 122 S.Ct. 396 (2001); Lines, 208 F.3d at 164-66.

To show cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements. Murray v. Carrier, 477 U.S. 478, 488 (1986); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.) cert. denied, 504 U.S. 944 (1992).  "Prejudice" will be satisfied if the habeas petitioner shows that the outcome was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993); Coleman, 501 U.S. at 750.  In order to demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent of the crime by presenting new evidence of innocence.  Schlup v. Delo, 513 U.S. 298 (1995); Keller, 251 F.3d 408.

In view of the passage of time since Corliss' conviction became final, it does not appear as though he could pursue any state court remedies at this time. See Lines,

20

208 F.3d at 163.  That is, any relief that may have been available to him under the PCRA act is now foreclosed by its one-year statute of limitations and Petitioner's claims does not fall within one of the exceptions to the one-year limitations period of the PCRA.  <u>See</u> 42 PA. CONS. STAT. § 9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

Petitioner, however, has not alleged cause or prejudice.  Nor has he demonstrated his actual innocence such that a lack of review by the Court will constitute a fundamental miscarriage of justice.  Accordingly, Petitioner's above unexhausted challenges to the validity of his conviction must be rejected on the ground that he has failed to pursue these issues in the state courts and has not established appropriate grounds for this Court to consider the claims in the first instance.  Consequently, the Petition for Writ of Habeas Corpus will be denied as to these claims. The Court, however, will reach the merits of only the properly exhausted claims, alleging ineffectiveness of counsel.

**B.**     **Claims Addressed on the Merits**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") significantly revised the standard of review for habeas claims by state prisoners when a state court has previously considered and rejected those claims.  See Dickerson v. Vaughn, 90 F.3d 87, 89 (3d Cir. 1996).

(a)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403 (2000).  Only if the petitioner can establish that the state court's adjudication was "unreasonable," in a determination of either law or fact, is federal relief potentially available.  See 28 U.S.C. § 2254(d); see also Marshall v. Hendricks, 307 F.3d 36, 51 (3d Cir. 2002).

An unreasonable determination of law is most apparent when the state court recites the incorrect federal standard in resolving constitutional claims.  The PCRA

Court decision addressing Petitioner's first PCRA petition, adopted in toto by the Superior Court, suffers from no such flaw.  The controlling United States Supreme Court case on the issue of constitutionally ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  Under Strickland, the petitioner must demonstrate by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness and that there is a "reasonable probability" that but for counsel's unprofessional errors the result of the proceeding would have been different.  Id. at 687-88, 694; see also id. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").  The PCRA Court, without citing Strickland expressly, repeated the "reasonable probability" standard verbatim.  See Werts v. Vaughn, 228 F.2d 178, 192 (3d Cir. 2000).  Its decision was not "contrary to" federal law.  See Woodford v. Visciotti, 537 U.S. 19, 22-24 (2002) (stating that a state court decision that correctly recites governing legal standard is not "contrary to" federal law).

Moreover, the PCRA Court applied the Strickland rule in a reasonable manner. As required by federal precedent, the PCRA Court engaged in a detailed analysis of the evidence presented at trial, objections and arguments by counsel, and instructions by the court to determine whether there was a reasonable probability that the alleged

23

errors altered the outcome of the case.  See id. at 24-27; see also Wiggins v. Smith, 123 S. Ct. 2527, 2542 (2003) (stating that courts should weigh totality of circumstances in gauging prejudice).  The PCRA Court concluded that, whatever potential errors, if any, that had been made by counsel, could not have had an effect on the jury's verdict.

Just as no error of law was committed by the state court, no error of fact is present in their determinations.  The PCRA court conducted an evidentiary hearing at which Corliss' trial counsel recounted his reasoning for not calling character witnesses at trial.  Trial counsel testified that in the course of interviewing the witnesses provided by Petitioner, and other witnesses, trial counsel discovered some bad character evidence, including Petitioner's prior record for *crimen falsi*, that was of concern to him.  Specifically, trial counsel testified as follows:

Trial Counsel: I spoke with a number of Appliance Doctor employees, and in the course of those phone interviews they described Mr. Corliss as – well, I think one word was scum bag, a liar, arrogant, not trustworthy. They said they would come and testify, by they didn't think that I would want them to. I also spoke to a local veterinarian's wife who had some dealings with Mr. Corliss. She described him as belligerent, arrogant, said that there was an issue concerning his practicing veterinary medicine without a license and so on. I also became aware of his half-sister, I believe, had made some allegations about his raping her

24

when she was of a young age.

Ms. Stephan:        To your knowledge was she available at the trial with Mr. Corliss?

Trial Counsel:      She was sitting in the front.

Ms. Stephan:        You already mentioned as well about his prior criminal history.  What was the significance of that?

Trial Counsel:      It would be classified as *crimen falsi*, which would mean it could be used to impeach him on rebuttal should he put character in issue.

Ms. Stephan:        During this defendant's testimony today he testified that your conversations with her [sic] were essentially that that [sic] character wasn't a very – *crimen falsi* wasn't a very big deal; you could address that?

Trial Counsel:      I told him it was a very big deal; *crimen falsi* is red hot, not something easily gotten around.  I told him if he insisted on starting a character war that I would do the best I could to minimize the damage, but I told him that would be a major problem.

Ms. Stephan:        Judging from your comments there, did you discuss with him whether or not it would be a good or bad idea to present character testimony.

Trial Counsel:      I discussed it with him at length.  I had a column A and column B, and under A was all of the bad evidence that would come out at trial; under column B was the good character evidence.  The only thing he could offer me was he had participated in the Monroe County Litter Brigade as some sort of supervisor, and seemed to pass that off as a

25

> public service of some kind.  I thought on balance this bad
> character evidence far outweighed any good character
> evidence.  I advised him not to start a character war, but
> told him that it was up to him, it's his right as defendant to
> take the stand or not take the stand.  I told him things that
> he said he was planning to say could trigger a character
> war and that he should be aware of that.  He decided when
> he took the stand to not go there.

Ms. Stephan:       Essentially, that was his choice?

Trial Counsel:     It was his choice.

(Doc. 46, Monroe County Court of Common Pleas Opinion dated 6/20/00 at p. 6).

The PCRA found that in view of Petitioner's prior convictions for Theft and Theft by

Deception as reflected in the Pre-sentenced Investigation Report, the suggestion that

trial counsel was ineffective for failing to call character witnesses was without merit.

Id.

The state court also found that counsel acted reasonably in addressing the

victim's knowledge of the birthmark on Petitioner's penis. The victim testified at trial

that she had seen a birthmark on Petitioner's penis. (N.T.  Vol. I at 33).  Petitioner

points out that Karen Vales, Petitioner's then-girlfriend, told the police about

Petitioner's birthmark on July 3, 1998, a few days prior to trial.  The police report

indicates that Vales' description of the birthmark was consistent with that of the

victim.  However, the police reports did not document any statement by the victim about the birthmark.  Petitioner's argument is that trial counsel emphasized the victim's testimony rather than attacking her credibility on how she became aware of the birthmark.  Trial counsel testified to the issue at the evidentiary hearing as follows:

| Trial Counsel: | I received some discovery indicating that there would be testimony as to identifying marks on Mr. Corliss' penis.  I questioned him about that.  I received conflicting stories from him.  It seemed to me that at one point he was saying that girl's – [D.G.] is just guessing that he had marks on his penis, but at other points in time he indicated that he had a conversation with her wherein she described birthmarks on her body to him, and described birthmarks or marks o his body, including his penis, to her.  I did the best I could under the situation.  I called his then current girlfriend to the stand and questioned her about these marks on the penis because I understood from her proffer that her description of the marks would differ from [D.G's] description.  I thought I did as much as anyone could to cast doubt on the credibility of [D.G's] testimony regarding those marks, and other than that, it was a question of fact for the jury to decide. |
|---|---|
| Ms. Stephan: | Can I conclude from your answer that the defendant gave you more than one version of how the victim could have known about this mark on his penis? |
| Trial Counsel: | He give [sic] me more than one version. |
| Ms. Stephan: | And during the course of the trial he actually testified to |

|  | how the victim could have known about this mark, correct? |
|---|---|
| Trial Counsel: | Yes, I believe he did. |
| Ms. Stephan: | And his answer was that she guessed at that time? |
| Trial Counsel: | I believe his answer was that she guessed. |
| Ms. Stephan: | During the course of trial when you were essentially covering this in your direct examination of the defendant, can you explain to us the nature of your questions, or how you asked the question? |
| Trial Counsel: | I phrased the questions in as open-ended a manner as possible, so as to afford Mr. Corliss every opportunity to tell his side of the story on that issue and to have his day in court. It was up to him to answer that question and present what he wanted to present as an answer. |

(Doc. 46, Monroe County Court of Common Pleas Opinion dated 6/20/00 at p. 13, 14). The PCRA Court concluded that trial counsel proceeded in an ethical and effective manner while addressing the issue of Petitioner's birthmark. This Court finds these findings well supported by the evidence presented at the PCRA hearing and at trial, and cannot be deemed "unreasonable."

Corliss has failed to establish that the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor has he established that the

proceedings resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Thus, habeas relief is unavailable under § 2254(d), and the Court will deny the instant Petition. Finally, because Corliss has failed to make a substantial showing that a federally protected right was violated, the Court will refuse to issue a certificate of appealability.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.   The Petition for Writ of Habeas Corpus (Doc. 1) is DENIED.

2.   Petitioner's Motion for Summary Judgment (Doc. 32) is DENIED.

3.   Petitioner's Motion to Strike Respondent's response to Petitioner's Motion for Discovery, and Motion for Rule 11 Sanctions (Doc. 34) is DENIED.

4.   Petitioner's Motion for Discovery (Doc. 35) is DISMISSED as moot.

5.   Petitioner's Motion for Speedy Disposition (Doc. 42) is DISMISSED as moot.

6.   The Clerk of Court is directed to CLOSE this case.

7.   A certificate of appealability is DENIED.

s/ John E. Jones III
John E. Jones III
United States District Judge